UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------x
LIBERTY INSURANCE CORPORATION,
LIBERTY MUTUAL FIRE INSURANCE
COMPANY, THE FIRST LIBERTY
INSURANCE CORPORATION, LM
GENERAL INSURANCE COMPANY, LM
INSURANCE CORPORATION, GENERAL
INSURANCE COMPANY OF AMERICA,
AMERICAN STATES PREFERRED
INSURANCE COMPANY, and SAFECO
INSURANCE COMPANY OF INDIANA,
                            Plaintiffs,

            -against-

LEONID (LENNY) BRENMAN, YURIY
SLUPSKY, NATALIE ARNOFF, M.D.,
LYUDMILA MICHAEL SLUPSKY, M.D.,
AUSTIN DIAGNOSTIC MEDICAL, P.C.,
EX-LS MEDICAL, P.C., ABC MEDICAL
MANGAGEMENT, INC., JOHN DOES 1
THROUGH 20, and CORPORATIONS 1
THROUGH 20,
                            Defendants.
------------------------------------------------------x

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ MAR 1 - 2016 ★
BROOKLYN OFFICE

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
14-CV-5892 (CBA) (LB)

**AMON, Chief United States District Judge:**

On October 8, 2014, plaintiffs (collectively, "Liberty Mutual") filed the instant action pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, et seq. Liberty Mutual alleges that defendants engaged in a scheme to fraudulently bill insurance companies for medical services under New York's no-fault insurance law. Liberty Mutual also asserts state-law claims for fraud and unjust enrichment. Liberty Mutual seeks compensatory, punitive, and treble damages, together with costs and fees, as well as declaratory relief.

Defendants Natalie Arnoff, M.D., and Austin Diagonistic Medical, P.C., (collectively, the "Austin Diagnostic defendants") moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Liberty Mutual's RICO claim should be dismissed (1) in part, as

1

barred by the statute of limitations, and (2) for failure to state a claim on which relief may be granted. (D.E. # 13.) At the oral argument held on August 13, 2015, the Court denied that motion in its entirety.[1] (See D.E. dated Aug. 13, 2015.) The reasons for that decision follow.

## BACKGROUND[2]

This case arises from an alleged scheme to defraud insurers under New York's no-fault insurance system.

### I. New York's No-Fault Insurance Law and the Alleged Fraudulent Scheme

New York's no-fault insurance law provides coverage for certain costs (including medical expenses) incurred in an automobile accident regardless of fault. N.Y. Ins. Law §§ 5102–03; see also State Farm Mut. Auto Ins. Co. v. Rabiner, 749 F. Supp. 2d 94, 98–99 (E.D.N.Y. 2010). An insured victim can assign those benefits to a healthcare provider, which may then submit claims for qualifying medical services directly to the insurer. 11 N.Y.C.R.R. § 65-3.11; see also N.Y. Ins. Law §§ 5102, 5108 (qualifying services and permissible charges). "As a prerequisite to reimbursement, [healthcare providers] must comply with state and local licensing requirements, such as being owned and operated by physicians who practice through the corporation." Liberty Mut. Ins. Co. v. Excel Imaging, P.C., 879 F. Supp. 2d 243, 254 (E.D.N.Y. 2012); accord State Farm Mut. Auto. Ins. Co. v. Mallela, 4 N.Y.3d 313, 320–21 (2005) (holding that "unlicensed or fraudulently licensed providers" are "ineligible for reimbursement" under New York's no-fault law); 11 N.Y.C.R.R. § 65-3.16(a)(12) (provider is not eligible for reimbursement "if the provider fails to meet any applicable New York State or local licensing requirement").

---

[1] Because the Court denied the motion to dismiss Liberty Mutual's RICO claim, it need not address the argument that, were the Court to dismiss the RICO claim, it should decline to exercise supplemental jurisdiction over the remaining state-law claims under Federal Rule of Civil Procedure 12(b)(1). See, e.g., Daniel v. T &M Protection Res., Inc., 992 F. Supp. 2d 302, 316 (S.D.N.Y. 2014).

[2] The Court addresses herein only those facts relevant to the instant motion. The facts are drawn primarily from the complaint and are deemed true for purposes of this motion.

Plaintiffs are insurance companies authorized to conduct business and issue automobile insurance policies in New York. (D.E. # 1, Compl. ¶¶ 43–52.) Austin Diagnostic is a New York professional service corporation owned by Dr. Arnoff, a New York resident licensed to practice medicine in New York. (Id. ¶¶ 59, 65.) Liberty Mutual alleges that it has paid tens of thousands of dollars of no-fault claims to Austin Diagnostic for medical services allegedly rendered to Liberty Mutual's insureds and has identified thousands of such claims still pending. (Id. ¶¶ 106, 176; id. Ex. B. at 1–127.) Liberty Mutual argues that Austin Diagnostic is ineligible to receive payments for those services because it is actually owned and operated by non-physicians in violation of New York law.[3] Specifically, Liberty Mutual contends that Dr. Arnoff owns Austin Diagnostic in name only and permitted defendant Leonid Brenman—who did not join the instant motion—the "true owner[]" of Austin Diagnostic, to use her name and license to incorporate Austin Diagnostic in exchange for compensation. (Id. ¶¶ 60, 65, 96, 98–100.)

To support these claims, the complaint makes specific factual allegations regarding the respective roles of Dr. Arnoff and Brenman—who is not a licensed physician—in the formation and operation of Austin Diagnostic. (See, e.g., id. ¶¶ 119, 121.) In addition, 132 pages of spreadsheets attached to the complaint identify (1) no-fault reimbursements Liberty Mutual has already paid to defendants, and (2) as yet unpaid no-fault claims that form the basis for the requested declaratory relief. (Id. ¶ 35; id. Exs. A, B.) These spreadsheets identify the nature and date of each such claim, all of which Liberty Mutual alleges were submitted by means of the U.S. Postal Service. (Id. ¶¶ 154–156.) The complaint also contains a 165-page Appendix listing the

---

[3] The complaint also alleges that defendants split fees with non-physicians in violation of New York law, and Liberty Mutual seeks compensatory and declaratory relief accordingly. (See Compl. ¶¶ 32–33, 87–90.) Defendants did not address the fee-splitting claim in their motion to dismiss; accordingly, the Court treats the instant motion as a partial motion to dismiss the RICO claim to the extent it is based on Austin Diagnostic's alleged fraudulent incorporation. See Sikarevich Family L.P. v. Nationwide Mut. Ins. Co., 30 F. Supp. 3d 166, 170 n.3 (E.D.N.Y. 2014) ("[T]he court declines to address issues not raised explicitly in the motion to dismiss.").

3

alleged predicate acts underlying the RICO claim, including the false and misleading statements contained in each, as well as the purpose for which those statements were made. (Id. App'x.)

Finally, the complaint alleges that "[p]laintiffs did not discover and should not have reasonably discovered" the alleged fraudulent scheme "until shortly before they filed their complaint," due to defendants' "material misrepresentations and other affirmative acts to conceal their fraud." (Id. ¶ 144.)

## II. Prior Litigation

On February 3, 2010, three of the seven plaintiffs in this action, Liberty Insurance Corporation, The First Liberty Insurance Corporation, and Liberty Mutual Fire Insurance Company (the "Queens County plaintiffs") filed a complaint in New York Supreme Court, Queens County (the "Queens County action") against Austin Diagnostic and other entities that are not parties to the instant action. (D.E. # 33-2, Alison Cohen Decl. in Supp. of Mot. to Dismiss ("Cohen Decl."), Ex. A.) The Queens County plaintiffs sought a declaration that the defendant healthcare providers, including Austin Diagnostic, were not entitled to reimbursement for certain no-fault claims they had submitted. (Id. ¶ 1.) They alleged that each of the defendants had refused to provide examinations under oath ("EUOs") in support of the challenged claims, thereby failing to satisfy a condition precedent to reimbursement under New York's no-fault law. (Id. ¶¶ 1, 25–26, 28–56.) The Austin Diagnostic defendants contend that the Queens County complaint reveals that Liberty Mutual was on notice of the fraudulent conduct alleged in the present action in February 2010, and argue that the RICO claim is therefore partially time barred. (Id. ¶ 25.)

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted." To avoid dismissal, a plaintiff must state a

4

claim that is "plausible on its face" by alleging sufficient facts for "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

In addition, Federal Rule of Civil Procedure 9(b) requires that allegations of fraud be pled with particularity. To satisfy this heightened standard, "the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir. 2006) (internal quotation marks and citation omitted). "Conclusory allegations of fraud will not survive Rule 9(b)'s heightened pleading standard, and therefore, will be subject to dismissal at the motion to dismiss stage." Sky Medical Supply Inc. v. SCS Support Claims Servs., Inc., 17 F. Supp. 3d 207, 219–20 (E.D.N.Y. 2014).

## DISCUSSION

### I. Statute of Limitations

The Austin Diagnostic defendants first argue that Liberty Mutual's RICO claim is time barred with respect to any predicate acts that occurred before October 8, 2010. As an initial matter, a statute of limitations defense may only be raised in a Rule 12(b)(6) motion "if the defense appears on the face of the complaint." Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 74–75 (2d Cir. 1998); accord Ghartey v. St. John's Queens Hosp., 869 F.2d 160, 162 (2d Cir. 1989). Nothing in the complaint suggests that Liberty Mutual's RICO claim is time barred; indeed, the Austin Diagnostic defendants rely entirely on evidence from beyond the pleadings in arguing that Liberty Mutual's claims are time-barred. As such, their statute of limitations argument is patently premature. See Pani, 152 F.3d at 74–75.

In any event, dismissal on statute of limitations grounds is inappropriate at this stage because fact discovery is necessary to determine when Liberty Mutual's RICO claim accrued. A civil RICO claim accrues when a plaintiff "ha[s] actual or inquiry notice of the injury.'" Koch v. Christie's Int'l PLC, 699 F.3d 141, 148, 150 (2d Cir. 2012) (quoting In re Merrill Lynch Ltd. P'ships Litig., 154 F.3d 56, 59–60 (2d Cir. 1998)). A plaintiff has "inquiry notice" when there have been so-called "storm warnings" or "circumstances that would suggest to [a plaintiff] of ordinary intelligence the probability that she has been defrauded." Id. (quoting Lentell v. Merrill Lynch & Co., Inc., 396 F.3d 161, 168 (2d Cir. 2005)).

The Austin Diagnostic defendants claim that the following allegation from the Queens County complaint demonstrates that the Queens County plaintiffs were on inquiry notice, if not actual notice, of the alleged fraud by February 3, 2010:[4] "[A]n investigation conducted by Liberty Mutual into treatment rendered, revealed that as to each of the defendants, there are issues that each is not wholly owned by the alleged owner of each such defendant, in violation of the applicable regulations of New York State." (Cohen Decl., Ex. A ¶ 25.) This argument is unpersuasive. Putting aside the fact that five of the plaintiffs in this action were not parties to the Queens County action—in which Dr. Arnoff, the lynchpin of the alleged Austin Diagnostic RICO enterprise, was not even mentioned—the singular, vague statement that "there [were] issues" as to whether Austin Diagnostic was properly incorporated hardly establishes that Liberty Mutual had notice in February 2010 of the fraudulent scheme now alleged.

---

[4] Although a court's review under Federal Rule of Civil Procedure 12(b)(6) is generally confined "to facts stated on the face of the complaint," Leonard F. v. Isr. Disc. Bank of N.Y., 199 F.3d 99, 107 (2d Cir. 1999), the Court may "take judicial notice of the fact that . . . [a] prior lawsuit[] . . . contained certain information, without regard to [] truth . . . in deciding whether so-called 'storm warnings' were adequate to trigger inquiry notice," Staehr v. Hartford Fin. Servs. Grp., Inc., 547 F.3d 406, 425 (2d Cir. 2008).

Even if it did, Liberty Mutual contends that its investigation into the alleged fraudulent scheme tolled accrual of its RICO claim until "the date such inquiry should have revealed the fraud." (D.E. # 37, Pls.' Mem. in Opp. at 17 (citing Koch, 699 F.3d at 153).) Liberty Mutual also claims that defendants took steps to conceal the fraud, which further frustrated Liberty Mutual's ability to detect the fraudulent scheme. (Id. at 18; Compl. ¶ 144.) When Liberty Mutual became aware of the fraud, when their investigation commenced and concluded, and whether and to what extent defendants' conduct may have frustrated these efforts are factual questions that cannot be determined from the face of the complaint and can only be ascertained through the discovery process. See, e.g., Schwab v. Philip Morris USA, Inc., No. 04-CV-1945 (JBW), 2005 WL 2467766, at *1 (E.D.N.Y. Oct. 6, 2005). Accordingly, the Court cannot determine whether Liberty Mutual's claim is barred by the statute of limitations at this stage of litigation, and the motion to dismiss on these grounds is denied. See, e.g., Allstate Ins. Co. v. Ahmed Halima, No. 06-CV-1316 (DLI) (SMG), 2009 WL 750199, at *6 (E.D.N.Y. Mar. 19, 2009).

## II.     Plausibility of Liberty Mutual's RICO Claim

The Austin Diagnostic defendants also argue that Liberty Mutual has failed to state an adequate RICO claim because the complaint does not satisfy Federal Rule of Civil Procedure 9(b)'s heightened pleading standard. This argument is likewise unavailing.

To prevail on a civil RICO claim, a "plaintiff must establish that defendants 'conduct[ed] or participat[ed] . . . in the conduct of [an] enterprise's affairs through a pattern of racketeering activity.'" McLaughlin v. Anderson, 962 F.2d 187, 190 (2d Cir. 1992) (quoting 18 U.S.C. § 1962(c)). "Racketeering includes a whole host of criminal acts, including mail fraud." Id.; 18 U.S.C. § 1961(1). A plaintiff must show "at least two acts of racketeering" within ten years to establish a "pattern of racketeering activity." Id. § 1961(5); see also McLaughlin, 962 F.2d at 190.

7

In addition, Rule 9(b) requires a RICO plaintiff to "specify the statements [claimed to be] false or misleading, give particulars as to the respect in which plaintiffs contend the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." McLaughlin, 962 F.2d at 191 (quoting Cosmas v. Hassett, 886 F.2d 8, 11 (2d Cir. 1989)). Where the alleged predicate act of the RICO conspiracy is mail fraud, the plaintiff "must also identify the purpose of the mailing within the defendant's fraudulent scheme." Id.

The complaint alleges that defendants defrauded Liberty Mutual by submitting no-fault claims for medical services rendered by fraudulently incorporated healthcare providers that were ineligible for reimbursement. To support this claim, the complaint makes highly specific factual allegations about Dr. Arnoff's conduct, as well as Brenman's role in the ownership, maintenance, and operation of Austin Diagnostic. (See, e.g., Compl. ¶¶ 119, 121.) At least two such paragraphs of factual allegations are not pled "on information and belief," (id.), as were the other 197 paragraphs of well-pled allegations that the Austin Diagnostic defendants challenge on that ground.[5] Taken as true, at a minimum, those two paragraphs plausibly suggest that Brenman, a non-physician, played a significant role in the operation and management of Austin Diagnostic in contravention of New York law. See N.Y. Bus. Law §§ 1507–08. As such, Liberty Mutual states a plausible claim that Austin Diagnostic violated applicable New York licensing laws and was therefore ineligible to receive no-fault reimbursements. See Mallela, 4 N.Y.3d at 320–21.

In addition, Liberty Mutual's complaint identifies more than 600 specific claims, as well as the nature and date of each, which Austin Diagnostic allegedly submitted by mail while holding

---

[5] The Court does not address the objection that allegations pled "on information and belief" are inadequate to state a claim for fraud because, as discussed above, the complaint contains sufficient allegations not pled "on information and belief" to state a plausible RICO claim. The Court notes, however, that "allegations may be based on information and belief when facts are peculiarly within the opposing party's knowledge." Wexner v. First Manhattan Co., 902 F.2d 169, 172 (2d Cir. 1990).

8

itself out as an entity eligible to receive no-fault reimbursements, when in fact it was not. (Compl. ¶¶ 154–56; id. App'x.) Liberty Mutual identifies the allegedly false and misleading statements contained in each of these mailings, as well as the purpose for which those statements were made. (Id. App'x). These pleadings are more than sufficient to state plausible claim for civil RICO predicated on mail fraud, see McLaughlin, 962 F.2d at 190–91, and unquestionably "afford defendant[s] fair notice of the [] claim and the factual ground upon which it is based," Ross v. Bolton, 904 F.2d 819, 823 (2d Cir. 1990).

## CONCLUSION

For the reasons set forth above, the Austin Diagnostic defendants' motion to dismiss is denied in its entirety.

SO ORDERED.

Dated: February 29, 2016  
Brooklyn, New York

s/Carol Bagley Amon

Carol Bagley Amon  
Chief United States District Judge